IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CLARA P. BASKINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____) | CIVIL ACTION NO. 0:04-23083-RBH-BM<br><br>**REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff applied for Supplemental Security Income (SSI) in June 2001, alleging disability as of March 2001 due to obesity, diabetes, breathing problems, back and arm problems, cardiac problems, poor eyesight, and depression. (R.pp. 32-39, 44-45, 74-76, 85). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 22, 2003. (R.pp. 24-55). The ALJ thereafter denied Plaintiff's claim in a decision issued September 26, 2003. (R.pp. 13-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that



there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-four (44) years old as of



the date she alleges she became disabled, has a fourth grade education with past relevant work activity too remote in time to be relevant for purposes of her disability claim. (R.pp. 29, 31, 45, 75, 91, 98-105). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.  After review of the evidence and testimony in the case, the ALJ determined that, notwithstanding Plaintiff's impairments, she retains the residual functional capacity to perform a significant range of light work[1], and is therefore not disabled. (R.pp. 19-20). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give sufficient weight to the opinion of Plaintiff's treating physician and nurse practitioner; by failing to consider the severity of Plaintiff's mental disabilities, low educational level and depression; by failing to consider the combined impact of all of Plaintiff's mental and physical disabilities on her ability to work, and by failing to find that Plaintiff's residual functional capacity was reduced by her carpal tunnel syndrome. Plaintiff also asserts that the ALJ should not have used medical vocational Rule 202.16, but should have instead  used (at most) the sedentary chart and Rule 201.17, which would have resulted in a finding of disability.[2]

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[2] The Medical-Vocational Guidelines (i.e., the "grids") are "matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the grids, the Secretary has taken



After careful review of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed. First, with respect to the ALJ's treatment of the opinions of family physician Dr. James Shaw and his nurse, Torill Nelson, Dr. Shaw's medical records generally reflect that Plaintiff was prescribed medication for diabetes and hypertension and was considered obese. However, these records also reflect that on examination her lungs were generally found to be clear, her cardiac status reflected regular sinus rhythm, with no other medical concerns being noted. Dr. Shaw's records contain no diagnoses of carpal tunnel syndrome, depression or emotional problems, or problems with back and arm pain. Specifically, while Plaintiff did self report that she was anxious and depressed, for which she was given samples of Prozac, Dr. Shaw's records contain no objective evidence to support a diagnosis of this condition. See generally, (R.pp. 129-130, 135, 137, 139-140). Further, while Plaintiff did complain of back and left leg pain on September 12, 2001, for which she was given samples of Vioxx, Dr. Shaw's records do not reflect that any objective physical examination was performed. Rather, his office simply relied on Plaintiff's subjective complaints. (R.pp. 188-189).

On October 31, 2001, Plaintiff presented to Dr. Shaw complaining of shortness of breath and swelling in her feet, together with occasional sudden chest pain with an irregular heartbeat. On this occasion an examination was performed, and Plaintiff's lungs were found to be clear and her heart had a regular rhythm. Plaintiff did have some lower extremity edema consistent

---

administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.



with some spinal stenosis, but she was described by Dr. Shaw in his treatment notes as being a "healthy female". (R.pp. 184-187). Plaintiff was apparently supposed to return to see Dr. Shaw on November 2, 2001, but was a "no show". (R.p. 184). Plaintiff did, however, return to Dr. Shaw's clinic on November 12, 2001, at which time her lungs were clear, and her heart had a regular rate and rhythm without murmur. On this visit, Plaintiff had no edema in her extremities, and she was again described as being a "healthy female, in no acute distress." Dr. Shaw indicated that he would refer Plaintiff to a cardiologist. (R.p. 182). However, Plaintiff was again a "no show" for a follow-up appointment scheduled November 16, 2001. (R.p. 182). When she saw Dr. Shaw again on November 19, 2001, he again noted following a physical examination that Plaintiff was a "healthy female, in no acute distress. Obese....remainder of physical exam is normal." (R.p. 181).

Plaintiff thereafter had a cardiac catheterization performed on November 21, 2001, which was considered normal. While she was found to have minimal coronary artery disease, she had normal left ventricular function, well controlled blood pressure, and no edema in her extremities. (R.p. 155-157). Upon Plaintiff's return to Dr. Shaw on November 27, 2001, he noted that Plaintiff's heart catheterization was normal, while a physical examination performed that date showed no problems. (R.p. 180). Another examination performed on March 13, 2002 was again essentially normal. (R.p. 176).

The ALJ reviewed these medical records and noted that Dr. Shaw had completed a physician certificate for the Department of Social Services in March 2002 and January 2003 wherein he opined that Plaintiff had no work capacity due to her diabetes, anxiety/depression, sinus



tachycardia, and carpal tunnel syndrome. (R.pp. 15-16); see also (R.pp. 190, 224).[3] However, the ALJ gave little weight to Dr. Shaw's opinion of disability, specifically noting that Dr. Shaw's own medical records reflect that he had never referred Plaintiff for orthopaedic evaluation, that his treatment notes do not reflect objective findings related to Plaintiff's complaints, that no EMG or nerve conduction studies were included in the evidence to support any diagnosis of carpal tunnel syndrome, that there was no indication of ongoing problems with diabetes control, and that Plaintiff had never been treated at a mental health center for any major depressive disorder. (R.pp. 15-16).

In addition to noting Dr. Shaw's medical records, the ALJ also referenced the other medical evidence in the case. This evidence includes a consultative psychological evaluation performed by Dr. Elin Berg on September 14, 2001, wherein he opined that Plaintiff had a social phobia and an adjustment disorder with depressed mood, but was only mildly impaired socially, physically, and cognitively. He did not believe that Plaintiff could manage her own funds. (R.pp. 143-145).[4] A second consultative psychological examination was performed by Dr. Robert Noelker on October 25, 2001. Dr. Noelker noted that Plaintiff had never had mental health care or treatment and was functionally illiterate. He found Plaintiff to have a full scale I.Q. score of 76 (indicating borderline intellectual functioning), together with an adjustment disorder with mixed anxiety and depressed mood and dependent personality traits. (R.pp. 147-152). Plaintiff was

---

[3]Nurse Nelson had also opined in 2001 that Plaintiff could not work due to these problems, as well as chronic low back pain. (R.pp. 132-134). Although Plaintiff discusses her opinion as though it is entitled to "treating physician" status, it does not in fact merit such consideration. See Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1037 (9th Cir. 2003) [opinion of nurse practitioner is not an acceptable medical source, but rather an "other medical source" under § 404.1513(d).]; See also 20 C.F.R. 404.1513 (Listing acceptable medial sources).

[4]As previously noted, Plaintiff only has a fourth grade education. (R.pp. 29, 91).



advised to continue on her current medication regimen, and it was recommended that she attend outpatient behaviorally-oriented psychotherapy. (R.pp. 147-152).

The record also reflects that a consultative physical examination was performed by Dr. James Timmons on May 21, 2002. Dr. Timmons found that Plaintiff had a regular pulse with blood pressure 130/80, visual acuity of 20/70 bilaterally, clear chest, heart rhythm without murmurs, and normal rotation in lateral bending with her back with limited movement to about 60° on forward movement. Plaintiff had straight leg raising plus or minus at about 45° bilaterally, and although she weighed 207 pounds, she was able to squat with support. (R.pp. 194-196).

Plaintiff thereafter began receiving mental health counseling at the Kershaw County Mental Health Center in September 2002. (R.pp. 251-263). A physical examination performed at the Kershaw County Medical Center in March 2003 was essentially normal, specifically noting that Plaintiff did not have "any complications due to her diabetes." (R.pp. 241-242).

Finally, the record reflects that Plaintiff's medical records were reviewed by Dr. Charles Jones on June 6, 2002, who completed a physical residual functional capacity assessment in which he opined that Plaintiff had the physical RFC to lift and carry 50 pounds occasionally, 25 pounds frequently (medium level work), that she could sit, stand, and walk for 6 hours each during an 8 hour day, that she had no limitations on pushing and pulling and no manipulative, communicative, or environmental limitations, that she could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not perform work requiring fine vision due to decreased visual acuity and could never climb ladders, ropes, or scaffolds. (R.pp. 197-204). Psychological consultants Dr. Edward Waller and Dr. Pearce McCall also reviewed Plaintiff's medical records and completed mental residual functional capacity assessments. Dr. Waller found



on November 13, 2001 that Plaintiff had mild restrictions in her activities of daily living and in maintaining social functioning, moderate difficulties in the areas of concentration, persistence, or pace, and no episodes of deterioration or decompensation. Plaintiff was further found to be moderately limited in her ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods, but was not otherwise significantly limited. She was deemed to be capable of unskilled work, with the ability to perform simple tasks for over 2 hours with no special supervision, make simple work related decisions and where necessary request assistance from others, accept supervisory feedback and interact appropriately with others, and maintain a regular work schedule without interference from mental problems. (R.pp. 206-222). Dr. McCall reached these same findings based on his review of Plaintiff's medical records on June 19, 2002. (R.p. 209).

After review of these medical records and consideration of Plaintiff's subjective testimony; see (R.pp. 15-17, 33-49); the ALJ found and concluded that Plaintiff retained the residual functional capacity for light work, reduced by restrictions which require no fine visual acuity, avoidance of hazards such as unprotected heights and dangerous machinery and an environment free from poor ventilation, dust, fumes, gases and odors, with work restricted to the performance of simple, routine work involving only one or two step instructions, in a low stress environment, with no more than limited interaction with the general public. (R.p. 18). The records and opinions of Plaintiff's treating and examining physicians, discussed supra, provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining,

8



non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the non-treating consulting physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].  Plaintiff's argument that the ALJ failed to properly consider the severity of her mental disabilities, low educational level and depression are without merit.  The ALJ's finding that Plaintiff was restricted to simple, unskilled work reflects his consideration of her educational level and mental abilities, while her restriction to a low stress environment with limited interaction with the public adequately addresses her problems with anxiety and are within the capabilities set forth in her psychological records. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling.  There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]; Sitar v. Schweiker, 671 F.2d 19, 20 (1st Cir. 1982) [Psychological disorders are not always disabling per se; in particular, severe anxiety or depression is not in itself sufficient to establish eligibility for benefits absent a proper showing of related functional loss.].   The undersigned can find no reversible error in these findings.

      The undersigned also does not find that the ALJ improperly evaluated the evidence of Plaintiff's treating physician, Dr. Shaw. The ALJ specifically explained his rationale for discounting Dr. Shaw's opinion of disability, discussing both the other medical evidence in the record as well as the contrary medical evidence in Dr. Shaw's own records. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [a treating physician's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and

9



is not inconsistent with the other substantial evidence in the record]; 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]. The ALJ's opinion specifically reflects a thorough analysis of all of Plaintiff's medical records, and his hypothetical to the vocational expert reflects his assessment of the affect Plaintiff's impairments have on her residual functional capacity. (R.pp. 50-53).

Plaintiff's argument that the ALJ failed to consider the effect all of Plaintiff's impairments in combination would have on her RFC is also without merit. The ALJ properly considered and discussed all of the evidence, including Plaintiff's subjective testimony, in making his findings. See generally, Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving his disability]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]. While Plaintiff may argue that some of the medical evidence supports a more restricted sedentary RFC, the ALJ was within his authority to evaluate this evidence and reach a contrary conclusion. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence];



see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) [”the mere fact that working may cause pain or discomfort does not mandate a finding of disability”].

At the administrative hearing, the ALJ obtained vocational expert testimony wherein the VE was asked whether an individual of Plaintiff’s age, educational background, and job history could perform work at the level found by the ALJ. (R.pp. 46-53). In response to a hypothetical limiting Plaintiff to light work with the restrictions noted, the vocational expert identified several jobs which Plaintiff could perform with these limitations. (R.pp. 50-53). While Plaintiff complains that the ALJ did not include all of Plaintiff’s limitations in his hypothetical, in particular any reference to Plaintiff’s carpal tunnel syndrome, the Commissioner correctly notes that Plaintiff’s medical records do not contain any objective evidence that Plaintiff suffers from this condition, nor did the ALJ find that Plaintiff suffered from carpal tunnel syndrome. See generally, (R.pp. 16, 135-139, 176, 180-189, 195, 234-236, 242). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Therefore, the hypothetical given by the ALJ to the VE was proper, and the undersigned finds no grounds in the ALJ’s treatment of the vocational expert’s testimony for reversal of the final decision of the Commissioner. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995); Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision

(i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

December 2, 2005